Case No. 17-3461 Joseph Pratt v. Board of Commissioners et al. Argument not to exceed 15 minutes per side. Mr. Finney, you may proceed for the appellant. Good morning. May it please the Court, my name is Chris Finney, F-I-N-N-E-Y, and I'm the attorney for the appellants in this matter. Barely hear you, Mr. Finney. Joe Platt and Mark Miller. There is an inherent conflict between the judicial elections as the Ohio Supreme Court regulates them and the First Amendment as it traditionally has been interpreted in other applications. This conflict has been recognized in Williams v. Lee, it's been recognized by this Court in the case of Carey v. Woolman's Act. The Carey decision, I think appropriately, defines this and says, Compare, for example, how these same restrictions challenged would be addressed in a legislative election. It is doubtful that a single federal or state judge in the country would uphold them. Mr. Finney, could I ask a question that nobody seems to be addressing? And I'm not suggesting we should spend a lot of time on this, but I'm just curious about this. And that's the standing that any of your clients have here. I understand when he first filed this case that there probably was a better claim, but as I understand it now, three elections have gone past. He hasn't taken any action that, at least the record discloses, to run. He hasn't raised any money, even though he could have raised money. Do we simply take him at his word that he may run again sometime in the future?  Yes, Your Honor. Is he even contending that he still intends to run? He is, Your Honor. If I might, Rule 4.6 of the Ohio Code of Judicial Conduct, which we did not write, defines what is a candidate. Mr. Platt is a candidate because he's filed his designation and treasurer's certificate with the Hamilton County Board of Elections. So your position is he's now a candidate forever, regardless of whether he ever takes any steps to run, and that gives him standing? From my perspective, there's other issues on the standing issue. First of all, standing is established at the time the complaint is filed. It doesn't matter what the events are, but it certainly could be mooted. But in this particular case, as this Court recognized at the interlocutory appeal, this is a classic case where it's capable of repetition yet evading review. But the other thing I would like the Court to consider is sort of the chicken and the egg problem. He's only capable of repetition and evading review as to this person that's filing the challenge. And if he says, if he maintains he's going to run once this is cleared up, then I think you have standing. Yes, Your Honor. That's what you say he maintains. And he has maintained an active campaign committee. But as I said, there's also a chicken and the egg problem, which is while these rules are in place, it's difficult for him to be a viable candidate to get a nomination to— More likely to run if he wins this case? Is that the idea? I believe that's the case, Your Honor. Okay. You answered my question. Thank you. But there's—so there's no question that strict scrutiny applies in this particular instance. And what I'd like the Court—there are two countervailing principles, though, and we certainly can't overlook this intervening Supreme Court decision in William Julley. How does William Julley inform this case? Well, William Julley court tells us that it's limited to the very specific instances addressed in that case, which is the personal solicitation and under the First Amendment context. The William Julley court, written by Justice Roberts, actually goes to great lengths to tell us that it's limited in that scope and that this is a very grave and limited exception that the court considered. So these two principles colliding, which we have the traditional First Amendment analysis versus the exception, which we believe to be a very narrow exception enunciated by William Julley, how does this court resolve that? Well, I think if you go back to your own decision in Carey v. Walencek, just a 2010 decision, this court very carefully looked at that and said that strict scrutiny is going to apply. And even though the integrity of the judiciary, maintaining the integrity of the judiciary, is in fact a compelling state interest, the law has to be narrowly tailored. And the one thing I'd like the Court to focus on is— Don't these restrictions pretty much allow everything that was wrong with the other provisions? I mean, you can send letters, you can address a large group of people. It seems that all you can't do is raise money one-on-one with someone. And you can't raise money except for 120 days before the election. And you can't raise money except for once 120 days after the election has occurred, even if the candidate is dead. And the question when you're applying strict scrutiny is really a three-part test. Everybody refers to it as a two-part test, which is compelling state interest and narrow tailoring. But the other part of the test is, does the rule in fact advance the interest claimed to be advanced? And I have yet to see anywhere in this case, by evidence or by argument, any argument that explains why that 120-day limitation in any way advances the state's interest in judicial elections. We have a sitting—before his election to the Ohio Supreme Court, we had a candidate who was previously a Court of Appeals judge that started his election with a quarter million dollars in the bank. Now, how does a non-incumbent candidate—and remember, this is an as-applied challenge dealing with non-incumbent candidates, and in the case of Mr. Platt, a first-time candidate— how does a first-time candidate compete against somebody who starts the election with a quarter million dollars in the bank? That's a First Amendment violation because it's an absolute prohibition. I've got a question for you. I'm sorry. Your client has an open committee, right? He does. And every state is different. That's why I'm asking the question. Is he allowed to still keep money in it if there's no active election? He would be, Your Honor, yes. So he can accumulate? He could. So a candidate in the position of Mr. Platt could bring this case, and in the four years it takes to get to trial, during the open fundraising periods, he could raise money, accumulate those funds, and carry them over to the next elections. He could do that, yes, Your Honor. There's no question about that. He could spend money that he inherited, too, then, right? He could give money to himself, yes. I ask that as a reason. I mean, if the argument is that these rules are unfair to people who've run before, it's an unfairness that just has to do with the fact that you've accumulated money in one way or another before this process starts, and that could apply to someone who is rich, too, right? Yes. Well, no, Your Honor, because what we're challenging is not the fact that a justice of the Ohio Supreme Court has a quarter million dollars in the bank, or that somebody is rich. What we're challenging is that Mr. Platt is prohibited by the judicial canons from starting to raise money until 120 days before the election. I don't care about the person – Did that other candidate raise money more than 120 days before the election? They did. They raised it in the prior election cycle, yes. Did that other candidate raise it outside of what the prohibitions are in the Ohio rules? They raised it within what the Ohio rules allow. You seem to be making the sort of level playing field argument, and am I not? I'm just looking for it, and I can't find it right off the top of my head. Aren't the cases pretty clear that these constitutional restrictions are not akin to a level playing field? Your Honor, I'm so glad you asked because I litigate quite a bit in the First Amendment arena. We are not asking this court to take any action to level the playing field. What we're asking you to do is to remove the restriction that the Ohio Supreme Court has placed on that makes the playing field unlevel. So, again, imagine – So why is that different when you just say it the opposite way? Because, Your Honor, what I ask you to envision is that the Ohio legislature enacted these exact same rules in a legislative race. And if you apply all the same arguments that you just made and said why is it a problem that an incumbent member of the Ohio Senate can have a quarter million dollars in the bank and his opponent can't start raising money, can't start organizing his campaign, can't start speaking because he can't spend any money until he can raise money until 120 days before the election. Is that not a violation of the First Amendment of the highest order? It certainly is. To say that he can't speak is just not correct. Actually, Your Honor, let me read to you from this court's decision. I know you're going to read money as speech, but to say he can't speak at all is just hyperbole that doesn't really help us here. Well, unfortunately, Your Honor, that's entirely inconsistent with all the jurisprudence on campaign spending. When a sitting justice of the Ohio Supreme Court has a quarter million dollars during the six-year cycle leading up to the election, can spend that money any way he wants. And the court, in the Kerry decision, talked about what can you do with money. In reality, I'm sorry, this is the Williams v. Lee decision, what is speech? Can write letters, give speeches, put up billboards, can contact potential supporters in person on the phone and online, and they can promote their campaigns on radio, television, and other media. Allowed to do this for six years or he can only start doing it at a certain point? No, that's the whole point, Your Honor. Just, and I don't want to name names, but there's a sitting justice on the Ohio Supreme Court with a quarter million dollars in the bank. He doesn't have to run for five more years. He can spend that money today, tomorrow, and the next day on any of those things that he wants, and Mr. Platt has no ability to do any of those things. Is that because he doesn't have the money or because he can't do anything until a certain time before the election? No, if you can't raise money, you don't have money. The answer to the question is if you don't have money, you can't spend money. Okay, let's say he did have money. Yes. Let's say he had money from the last election when he ran unsuccessfully. Can he spend that money over the next six years? Absolutely, Mr. Platt could, and the sitting justice on the Ohio Supreme Court could both do the exact same thing. And as Judge Sutton from this court said in the Kerry decision, if you're well-connected, meaning you can start the 120-day period on the ground running, if you are an incumbent, meaning you have a war chest and you have all of those built-in systems to advance your campaign, or if you're independently wealthy, you can advance yourself. But that's not why this court is sitting here, and that's not your job. Your job is to make sure that there are not – and the difference, Judge McKee, is to suggest that the legislature or this court has a duty to level the playing field is not your job. But when the court intentionally advantages incumbents and says that the people who have those three things, incumbents, and this is Judge Sutton speaking, not me, incumbency, personal wealth, and an existing war chest, that those people have a built-in advantage in a campaign versus a first-time candidate or a non-incumbent who's trying to break in, it would never survive in the legislative context. And I have yet to hear an argument in this court as to how that in any way advances the question, which is what we're asking you to do. How does that in any way advance the question of promoting judicial integrity? And it gets to another question, which is we were prohibited in this case from doing any discovery whatsoever, which means I could not ask the defendants in this case how that advances that. We couldn't hire expert witnesses. We couldn't take depositions to find out what possible interest does it advance. And by the way, we're contesting the prohibition before the election. But think about the prohibition after the election. Counsel, I think your time is up. I want to ask you a question that doesn't count against your time because it doesn't really, I don't think, affect the result, but it would help my understanding. These are ethical rules that are enforced against anybody or enforced against judges or enforced against lawyers? What's the scheme? It's basically enforced through the mechanism of discipline of lawyers. So if Mr. Platt violated these rules, he could... Oh, do all judges have to be lawyers in the state? I believe except the Ohio Supreme Court, Your Honor. I'm sorry, oh, except the Ohio Supreme Court? I believe that's correct. Well, I'm just thinking in the odd situation where the person, clearly the campaign people don't have to be lawyers that are campaigning for him, or do they? Well, no, but I understand your question. So how, if you're going to die, they're not going to go against you, and if your other people aren't lawyers, there would be no effect to the decision? I mean, it's just a trivial question, but I'm wondering how that would work. You raise an excellent question that I hadn't thought about. Okay, well, thank you. Good morning, Your Honors. May it please the Court, my name is Drew Campbell. On behalf of the Ohio Supreme Court and the Board, I'm joined at the council table by my partner, Greg Kraybacher. Does Mr. Platt's status as a non-sitting candidate alter in any way this Court's analysis of Ohio's fundraising rule, 4.4E, as set forth in O'Toole v. O'Connor? And for that matter, does his status have any bearing at all on this Court's analysis of Ohio's solicitation rule, 4.4A, and its endorsement rules, 4.1A2 and 3? To answer these questions, you don't have to look very far. Williams v. Uli v. Florida Bar, O'Toole v. O'Connor, and Winter v. Walnitzek answer every question raised in this appeal by the appellants. Starting with the fundraising rule, 4.4E. Unless non-sitting judges, unless they apply differently, or unless the rules are different for non-sitting, is that the idea? That's correct, and the rules apply the same to non-sitting candidates as sitting candidates. The rules apply to every judicial candidate. So, for example, with 4.4E, in their reply brief, the appellants argued for the first time that they're not challenging the temporary limitations of 4.4E. They said, instead, they're challenging whether Ohio at any time can impose an absolute prohibition on speech, and whether that prohibition constitutes a restraint on speech. Well, we don't disagree that this is a case that deals with restraints on speech. That's what we're talking about, strict scrutiny. But if their case now is reduced to the question whether Ohio can even regulate at all in this space, that question was answered, in part, by William T. Lee and also by O'Toole. The O'Toole court said that Rule 4.4E, to your point, Judge McKeague, does not restrict, it's not an absolute prohibition on speech. It restrains the narrowest slice of speech on the one hand, with respect to the timing for solicitation, but leaves open the broadest array of political expression on the other. It's narrowly tailored. William T. Lee has answered the question, states have the authority to regulate in the space for judicial elections. And if that's where their argument is today, then this court's analysis can start and stop with William T. Lee. But the rule's temporal restrictions are also important. What they're asking the court to do now is to focus on the restriction on the one hand, but not to consider the narrow tailoring on the other. The temporal restrictions are the way that Ohio has narrowly tailored the limitations on fundraising and the receipt of judicial campaign contributions. And I think underneath all of this is the fact that the O'Toole case is actually binding authority in this case. Your local Rule 32.1b2 says that published decisions of panels are binding on subsequent panels unless overruled by an en banc decision. Here, the O'Toole court looked at an issue of law, they reviewed it de novo, and they issued a thoughtful and thorough published decision. The O'Toole case is binding authority in this case, and the principles apply to all the other rules that are being challenged here today. What Mr. Platt is really saying is that he thinks these rules are unfair. He thinks the fundraising rule is unfair because some incumbents have carryover funds, but candidates who've never run before have no funds to carry over. Well, the question is, is that because of the rule? Does the rule cause that result? The O'Toole court said no. That where there are surplus funds from prior campaigns, that comes from the sweat of the brow. That comes from the skill and the acumen of the other candidate and the committee. It has nothing to do with the text of Rule 4.4e itself. And I would add that where there are carryover funds, these are simply one of the many indivisible attributes of incumbency. Just like recognition and reputation and experience, carryover funds, when they exist, are part and parcel of the experience of the incumbent candidate. In Ohio, do judges run with an incumbency designation on the ballot? They do not. In the general election, there is no reference to political affiliation, no other reference to their prior experience. In our primaries, they do designate by party, and they do appear on the ballot with a partisan designation, but not in the general. A partisan designation, but they're not designated as an incumbent judge. Correct, they are not. Thank you. They also challenge whether Ohio has any compelling interest at all with respect to the non-sitting judge. They challenge the rationale of the rule. What they say is that while the rules and the rationales apply to people who are sitting, they don't apply to those who are not sitting. Well, I would just point out first of all that that's a significant concession in this case, because if a sitting judge ought not to engage in partisan political activity during a judicial campaign, why is it that the non-sitting judge wouldn't be required to play by the same rules? But there's a bigger obstacle to this argument than its illogic. The U.S. Supreme Court rejected it at least as early as 1976 in Buckley v. Valeo. There the court said that since the danger of corruption and the appearance of corruption apply with equal force to incumbents and challengers, Congress had ample justification for imposing fundraising constraints on both. There's some point, though, where rules that are made by incumbents that make it hard for everybody equally to campaign and express themselves inherently help incumbents? Isn't that kind of a First Amendment concern? Your Honor, if in fact we were dealing here with rules… Oh, we're dealing with rules, aren't we? If in fact we were dealing with rules that disabled a non-incumbent, then Your Honor's correct. There may well be a problem. Well, disable all of them, but the incumbents are going to – if nobody gets any information, incumbents win. I mean, everyone knows that. Well, Your Honor, these rules don't do that. They don't do that, but isn't it up to us to make sure that they don't constitutionally? I mean, isn't there some constitutional interest in not suppressing rules that don't have some sort of compelling reason because otherwise we're just inherently helping incumbents? That's what I'm worried about. Right. Well, the O'Toole court found that 4.48 doesn't do that. I mean, Judge White, to your point, the point that O'Toole was making was that there are a thousand things that one can do to get their message out at any time, not simply limited to the 120 days before a primary, and nothing about the Ohio rules restricts that. I mean, the suggestion here that… So you recognize that there's some suppression of activity that might be useful in a campaign, but there's so much other activity out there that the benefit outweighs that even-handed way of making things harder to get your voice out. Your Honor, I do not concede that Ohio has done anything to limit the ability of any judicial candidate to put their name out and to advocate for their own position. Economically speaking, any rule that does anything reduces the ability of somebody to act in favor of their campaign. Well, nothing about… You can't raise funds on Sunday afternoon. That's a limit on everybody, right? I don't see how you can say that doesn't limit to a certain extent their expressive ability. There may be a very good reason for it, in which case it's okay, but to say it doesn't limit their ability to express themselves just seems unpersuasive. If I may, several cases have looked at temporal limitations and found those to be constitutionally permissible limitations, particularly… I'm not asking whether they're constitutionally permissible. They are if they do burden expression at some level, right? That's exactly what the Sixth Circuit has said in prior cases. So I'm just saying as a general policy matter, it doesn't seem sufficient to say it burdens everyone equally when you've got incumbents running against non-incumbents. You've got to have some more justification for it in order for it to be constitutional, one would think. I am not aware of how 4.4E, the text of that rule, imposes a single limitation on any candidate's ability to advocate for their candidacy, their qualifications, or their fitness to serve on the bench. If we disagree with you on that, you lose then? Oh, I… It seems just almost default. Are you saying that you don't see how a restriction on fundraising affects free speech? No, I've said that the courts, this court, has recognized that temporal limitations are acceptable limitations when it comes to fundraising. And I would add that this court said it specifically in the context of judicial races. And if Williams v. Lee stands for anything, it stands for the proposition that judicial races are not like other partisan races. Courts get to regulate them differently because… That gets to the enormous reason for these limits. You seem to be arguing that there's no limit. The disconnect here is all Judge Rogers is trying to get you to admit is there are limits. You're going right to, oh, gee, that means they're unconstitutional. You can't say there are no limits here. Your argument is they do pass, muster, under all of the constitutional tests. You guys are quibbling about something that seems silly. I think, Your Honor, that I said just what you've said, that these temporal limitations are constitutionally permissible. I don't think you did say that. Maybe you meant it. Okay, well, I meant it. I meant it. But they are constitutionally permissible. They impose a restraint, but the courts have found this to be a reasonable restraint. I think the way that the Cary court put it, or the Gable court put it, was that it causes people to rearrange fundraising, but that's an acceptable burden. So in answer to Judge Rogers' questions, yes, these are restrictions on speech. Of course they are. They are simply constitutional in your view. I agree with you. At the very beginning, I said that no one questions that these rules burden speech. That's what we're talking about, strict scrutiny. They do, but they are permissible, and they've been found to be permissible by this court and by other courts in similar circumstances. But getting back to this question, whether Ohio has any justification for regulating the non-sitting candidate, I mentioned Buckley v. Vallejo. Williams v. Lee tells us the same thing. There the court imposed a more restrictive solicitation rule on a non-sitting candidate, just like Mr. Platt. And the reason it did so was because it said that Florida concluded that all personal solicitations of candidates create a public appearance that undermines confidence in the judiciary. All of them, not just those by sitting candidates. The concurrence of Wilson v. Kincannon out of the Ninth Circuit, making the same point when Judge Berzon said the mere fact that a non-sitting challenger might win is a sufficient contingency to trigger the state's interest. It justifies parallel restrictions on both the incumbent and the non-incumbent alike. Ohio has drawn exactly the same line. It simply says that when people running in the same race for the same chair, they ought to play by the same rules because their conduct can affect public perception in the same way. The same hand that takes the check on one day shouldn't sign the order the next day. It doesn't matter whether that's the hand of the incumbent or the non-incumbent. It affects the public's perception in exactly the same way. I see, Your Honors, that my red light is on. What about the restrictions on talking about other candidates, endorsing or opposing other candidates? Why are they necessary and why don't they impermissibly infringe on free speech? Well, as this Court pointed out in the Winter case, endorsements of third parties are found pretty much by every court to look at this to be using, particularly in the case of the sitting judgment, anybody's a judicial candidate. You're simply using your name to benefit somebody else. What the Winter Court said when it upheld Kentucky's similar restriction was that it's constitutionally permissible to restrict a judicial candidate from endorsing a third party as long as you don't prohibit them from speaking about their own campaign and their own qualifications. It was precisely because the Kentucky rule, which is identical to the Ohio rule on the endorsement issue 4.1A3, it's precisely because that rule did not restrict the candidate from speaking about their own qualifications that it was okay to target endorsements of others. So if you're running against a particular judge that you think is unfit or whatever, are you allowed to not only talk about how wonderful you are, but also how bad that judge is? Yes, because the restriction only deals with endorsing or opposing a candidate for another public office. It doesn't restrain you from speaking about your own opponent and your own race. Okay. Thank you, counsel.  Yes, the quote that I was looking for previously was not able to find from Judge Sutton in the Kerry case is, and this responds to Judge McKee and Judge White's questions on this, prohibiting candidates from asking for money suppresses speech in the most conspicuous of ways and in the process favors some candidates over others. Incumbent judges, and I'm going to skip his parentheticals, over non-judicial candidates, the well-to-do over lower-income candidates, and the well-connected over outsiders. So this notion that you're not really seriously talking about speech when we're talking about raising money, yes, I am serious. I think we got him to understand or to speak consistently with that perspective. Right. Thank you, Your Honor. The second thing I wanted to address is I strained again during the State's oral argument to hear any justification at all because there was none advanced in the pleadings and there's been none advanced in this oral argument as to how in any way, shape, or form the 120-day before and after election limitation advances the cause of public confidence in the integrity of the judiciary. I'm trying to figure out why this really is not like Williams where Williams basically says we don't need evidence. These are questions of law and the conclusion is pretty obvious. Ohio chooses to have elective judge races as opposed to being appointed. So you've got to run for office. To be able to get elected, you've got to do certain things. This is all obvious. All they seem to be saying is that you have to raise money and a 120-day limit seems to be as far out as we want to let you look like a politician. I mean, that's about it, isn't it? Yeah, but, Your Honor, what happens when you have incumbents is they set it just so far out that you can't win. They want to set the bar. For example, for the Ohio Supreme Court, we have seven or eight media markets in Ohio. It's one of the most difficult states in the country in which to run, to get your name ID up, and to suggest that you can do any of those things in a 120-day window is simply not realistic, unless, as Judge Sutton says, you're one of those three things. You're an incumbent, you're wealthy, or you're particularly well-connected. You've been the president of the Bar Association or whatever, and you can pick up the phone and get all these things done instantly. But the Constitution isn't just intended to protect those three categories of people. It's intended to protect the Joe Blatts of the world who aren't well-connected, who aren't wealthy, and who don't have incumbency. You have a case that says the temporal limit of 120 days is unconstitutional. Do I have one? Yes. There's all kinds of cases that talk about temporal limitations are unconstitutional. Yes, Your Honor, not necessarily in the fundraising context. So what's your best case then for us to say that the Ohio 120-day temporal limitation is unconstitutional? Unfortunately, Your Honor, I don't have the cases off the top of my head. But, for example, there are municipalities with zoning restrictions that say you can't put up yard signs but 90 or 120 days before the election. All of those are unconstitutional, Your Honor, all of them. And because we don't restrict speech based upon time. And let me say on the O'Toole decision, which was cited as the only case that this state has in support of that proposition, the O'Toole case was an incumbent versus an incumbent. She was an incumbent judge running against an incumbent. And we have positioned this case, and I believe that that was a facial challenge. This case is an as-applied challenge as it relates to non-sitting candidates. And in particular with Mr. Platt, first-time candidates. It's quite a contrast of position. The other thing I would like to point out is the Ohio Supreme Court, before it enacted these rules, had Judge McQuaid and panel of commission. And Judge McQuaid, and we've cited the McQuaid report in our brief, Judge McQuaid came out with his report about how to create integrity in the judiciary. And he liked, Your Honor, the 120-day limitation. But he said the only way the 120-day limitation works is if the sitting judges disgorge their campaign funds and everybody starts from square zero in these campaigns. The sitting incumbents writing the rules said, no, we don't like that. We're going to write the rules the way we want to, which of course benefits them. And in this case, it says that we are going to prevent our opponents from doing any significant organizing, raising any money. In your position, there can be no temporal limitations on fundraising? For non-incumbent candidates, I would say yes. Why? Is it appropriate to have temporal limitations on incumbent candidates? Personally, I don't believe that there are. But that's not what's at issue in this case. I'm just trying to figure out whether it's the same rules for incumbents and non-incumbents in your world. Right. Well, let me talk about that. So the justification that this unconstitutional rule needs to stand so that we can have fairness for the sitting judges who need to be protected is simply not the basis. The question is first, is the rule unconstitutional? Then the second question is, what is the remedy? In this particular case, to say to Mr. Platt, and these are Judge Sutton's words, you cannot speak until you hit the starting line, 120 days. You know, there's a saying that's kind of funny, which is they talk about a rich guy who had some modest success in life. And they say, well, he started on third base and he thinks he hit a home run, when in fact all he hit was a single. And that's what we say to every judge sitting on the court. We say, you can start with $250,000 in the bank and you look like a really smart candidate because you keep winning. Isn't that amazing? Well, it's amazing because your opponents can't organize sufficiently in advance to mount a successful campaign. Thank you. Thank you. The case will be submitted. Please call the next case.